UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JONES,<br><br>            Plaintiff,<br><br>     vs.<br><br>HILDRETH,<br><br>            Defendant. | 1:13-cv-01887-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br>(Doc. 1.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.      BACKGROUND**

Anthony Jones ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 21, 2013. (Doc. 1.) Plaintiff's Complaint is now before the court for screening.

**II.     SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§ 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not.  Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

**III.   SUMMARY OF COMPLAINT**

Plaintiff is presently in the custody of the California Department of Corrections and Rehabilitation (CDCR), incarcerated at Kern Valley State Prison (KVSP) in Delano, California, where the events at issue in the Complaint allegedly occurred.  Plaintiff names as defendants Correctional Counselor Hildreth, the Warden of KVSP, and an undetermined number of Doe Defendants.  All of the Defendants were employed by the CDCR at KVSP at the time of the events at issue.  Plaintiff's factual allegations follow.

On October 27, 2013, Plaintiff gave an inmate request form to officer John Doe during mail pick up, informing the officer that Plaintiff's life was in danger and that Plaintiff had actually been threatened by a known gang.  The officer read the request, looked at Plaintiff, and walked away with the request form.

On October 28, 2013, not having been contacted by anyone from custody concerning his safety issue, Plaintiff wrote the same request for protection on a health care services request form, and handed it to the lady who was giving out medication. The lady read it and handed it to the officer who had been escorting her, and they both walked off.

About half an hour later, Plaintiff was called out of his cell, handcuffed, taken to the Program Office building, and seated in the Sergeant's office. There were three Sergeants present, two Latinos and one African-American. One of the Latino Sergeants asked Plaintiff, "What's up?" (Compl. ¶15.) Plaintiff said that a gang known by custody staff was out to seriously injure him. Plaintiff reluctantly said that he was being extorted for having a fight with one of their members in August 2012. Plaintiff told the officers that as long as he paid and did what the gang wanted, they wouldn't harm him. The Sergeant asked who had threatened Plaintiff, and Plaintiff hesitated. The Sergeant said, "You gotta give me something to work with or I'll send you right back to your cell." (Id.) Because the risk of danger was high, Plaintiff named a particular gang member who had crept up behind him with a razor, trying to cut him without him knowing. Plaintiff said it was because he had been double-celled with an inmate convicted of rape, and Plaintiff had been told not to allow anyone with a "sex crime" to live in the cell with him. (Id.) Plaintiff had the cellmate for three months, so the gang told him that he had to assault his prior cell mate, a 58-year-old man. Subsequently, Plaintiff was given another cellmate convicted of rape.

After finding that Plaintiff was willing to talk, the Sergeant said, "So, who's got the cell phones; and who's bringing in the drugs?" (Id.) Plaintiff said he didn't know. Suddenly, the Sergeant said to one of the other officers, "Put him in a holding cage and let him think about it," and told Plaintiff, "If you don't give me something that I can go and verify, I'm sending you back to your cell." (Compl. ¶16.)

Plaintiff was then taken to a holding cell. The Sergeant told Plaintiff to identify gang members who had Plaintiff fearing for his safety, by pointing out their faces and giving their known aliases. Plaintiff did this, and the Sergeant circled the identified gang members and wrote down their aliases. Plaintiff was not shown photos of all of the persons in D-5 building,

or even a photo of the person who had attempted to cut him.  Plaintiff was then told that every identified gang member would be classified as his enemy.  Plaintiff was placed in administrative segregation.

The next day, Plaintiff was interviewed by a Captain and told that if he wasn't more forthcoming with information, he would be recommended by this Captain to be released to C-Yard, where other members of the feared gang were housed.  Plaintiff told the Captain he was at risk of being attacked on C-Yard, and the Captain said, "You don't have any known enemies over there anyway."  (Compl. ¶24.)  Plaintiff explained that because inmates move between C-Yard and D-Yard, gang members would be waiting for Plaintiff in C-Yard, and his identity is well known.  Plaintiff had been at KVSP for nineteen months.  The Captain told Plaintiff he would be given another interview with a Sergeant and said, "I know that there is more to this than you are saying, so tell my Sergeant everything," and Plaintiff was taken back to his cell.  (Compl. ¶25.)

On November 13, 2013, Counselor Hildreth came to Plaintiff's cell and informed him that she would be recommending his release to C-Yard.  Plaintiff said he would not go, and explained the dangers to Counselor Hildreth.  Hildreth told Plaintiff that no "issues" existed on C-Yard and there was "nothing there" for Plaintiff to be worried about.  (Compl. ¶29.)

On November 14, 2013, Plaintiff was informed that he was no longer a "safety concerns" inmate and, per the "committee," he was to be released to C-Yard.  (Compl. ¶30)  The officer explained that if Plaintiff refused to move, officers would use any force necessary to take him anyway, so it was best for him to leave administrative segregation willingly.  Plaintiff asked the reason for this practice and was told that "once the Warden signs off that you are to be moved, we have to move you."  (Compl. ¶32.)  Ironically, Plaintiff had sent an inmate request to the Warden that morning, notifying him of Plaintiff's safety concerns.[1]  And a few days earlier, Plaintiff sent information to his appellate attorney, asking him to be a

---

[1] Plaintiff refers here in the Complaint to "Exhibit A."  (Compl. ¶33.)  However, no exhibits were submitted with the Complaint.  (Doc. 1.)

witness and fax all of the documents to the KVSP Warden.  Also, on November 13, 2013, Plaintiff submitted a sick call slip to mental health about his safety concerns.[2]  On November 14, 2013, during the last pill call at 8:00pm, Plaintiff gave another sick call slip to the nurse, detailing his safety concerns.  Plaintiff was informed that he would be moving to C-Yard as soon as a bed opens up for him.

Plaintiff does not request any relief in the Complaint.

### IV. PLAINTIFF'S FAILURE TO PROTEC CLAIM

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

///

---

[2] Plaintiff refers here in the Complaint to "Exhibit C." (Compl. ¶35.) However, no exhibits were submitted with the Complaint. (Doc.1.)

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health ... .'" Id. at 843 (*citing* Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff has not alleged facts rising to the level of an Eighth Amendment violation. Plaintiff fails to show that anyone on the C-Yard posed a particular present danger to Plaintiff. Inmates of opposite gangs placed in a cell with each other, without more, fails to satisfy the Eighth Amendment's standard that a prison official must be aware of a specific risk to an inmate. Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1161 (9th Cir. 2013). Moreover, Plaintiff fails to allege facts showing that any of the Defendants acted against him while knowing of, and deliberately disregarding, a substantial risk of serious harm to Plaintiff. At the time Plaintiff's Complaint was filed, he had not been released from administrative segregation and therefore had not been exposed to a risk to his safety on C-Yard by Defendants. Finally, Plaintiff shows no injury resulting from Defendants' actions. Therefore, Plaintiff fails to state a claim against any of the Defendants for failure to protect him.

## V. CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's Complaint fails to state any cognizable claims upon which relief may be granted under § 1983.  The Court also finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983, and that this dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g).  Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 14, 2014**                     **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE